## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.:**

___

DANA FOLEY, ANDREA SAMSON, STEVE OLSON, PAT MCFALL,

    Plaintiffs,

v.

THE CITY OF LOVELAND, a Colorado Municipal corporation

    Defendant.

___

## COMPLAINT

___

    Plaintiffs, Dana Foley, Andrea Samson, Steve Olson, and Pat McFall (hereinafter "Plaintiffs"), by and through their undersigned attorneys, bring this action seeking damages pursuant to 42 U.S.C. § 1983 for the depravation of Plaintiffs right to freedom of expression and right to petition under the First and Fourteenth Amendments of the Constitution of the United States by the Defendants official policy to investigate and prosecute Plaintiffs; declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, declaring the official city policy to investigate and prosecute Plaintiffs unconstitutional facially and as applied under the United States Constitution; injunctive relief pursuant to 42 U.S.C. § 1983, prohibiting the City from enforcing the unconstitutional official policy; and for attorney fees and costs pursuant to 42 U.S.C. § 1988.

## PARTIES

1. At all times relevant, Plaintiff Dana Foley has been an individual citizen and a resident of the State of Colorado and was a member of the Loveland City Council.

2. At all times relevant, Plaintiff Andrea Samson has been an individual citizen and a resident of the State of Colorado and was a member of the Loveland City Council.

3. At all times relevant, Plaintiff Steve Olson has been an individual citizen and a resident of the State of Colorado and was a member of the Loveland City Council.

4. At all times relevant, Plaintiff Pat McFall has been an individual citizen and a resident of the State of Colorado and was a member of the Loveland City Council.

5. At all times relevant, Defendant City of Loveland (hereinafter "Loveland" or the "City") is a Colorado municipal corporation.

1

## JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States and 42 U.S.C. § 1983.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

7. Venue in the United States District Court is proper in that the action complained of took place in the State of Colorado, and all the parties are residents of the State of Colorado.

## FACTUAL ALLEGATIONS

### The Loveland City Council

8. The Loveland City Council is the governing body of the City and has such powers as are possessed by the City, pursuant to § 3.1(a) of the Municipal Charter for the City of Loveland.

9. The corporate authority of the City shall be vested in the Loveland City Council, and the City Council shall possess all the legislative powers of the City and all other corporate powers pursuant to Chapter 2.08.010 of the Municipal Code for the City of Loveland.

10. The Loveland City Council shall act only by ordinance, resolution, or motion, and the Council may select the appropriate form for its action pursuant to § 4-5 of the Municipal Charter for the City of Loveland.

11. Motions shall require the affirmative vote of a majority of the members of the Council present pursuant to § 4-6(b) of the Municipal Charter for the City of Loveland.

12. A motion is thus a "formal action" and a "final policy decision" that was adopted or approved at a regular or special meeting pursuant to § 4-4(c) of the Municipal Charter for the City of Loveland.

### The Centerra South Proposal

13. In January 2004, the Loveland City Council passed a resolution approving the Centerra Master Financing and Intergovernmental Agreement (the "Centerra MFA"), and a resolution approving the US 34/Crossroads Corridor Renewal Plan (the "Crossroads Corridor Plan").

14. In September 2008, the Loveland City Council passed a resolution approving an amendment to the Centerra MFA to incorporate additional land, including 140 acres of legally designated agricultural land near Highway 34 and I-25 (the "Amended Centerra MFA").

15. The Centerra MFA and Amended Centerra MFA expire in 2029 – 25 years from the effective date of the Centerra MFA.

16. On November 7, 2017, Jacki Marsh was elected mayor of Loveland.

17. In August 2022, the developer of the Centerra MFA proposed carving out the undeveloped southern portion of the MFA into a new MFA, Centerra South (the "Centerra South Proposal").

2

18. Loveland City Council hearings regarding the Centerra South Proposal began in August 2022 in both the URA Commission (which constituted the City Council Members) as well as in City Council public meetings.

19. Mayor Marsh opposed the Centerra South Proposal.

20. On May 16, 2023, the Loveland City Council approved the Centerra South Proposal.

## SB 23-273

21. As it became apparent that the Centerra South Proposal would be approved by Loveland City Council, Mayor Marsh approached a freshman state senator, Sen. Janice Marchman, to sponsor statewide legislation designed to prevent the Centerra South Proposal from being enacted and limit further development of Centerra South.

22. Mayor Marsh's proposed legislation was introduced in the State Senate by Senator Marchman on April 10, 2023 as SB 23-273.

23. The purpose of SB 23-273 was to prevent the passage of the Centerra South Proposal and stop the development of Centerra South.

24. Mayor Marsh spearheaded the effort to pass SB 23-273 and testified before the senate committee in support of the bill.

25. During her testimony before the senate committee, Mayor Marsh intimated that she spoke on behalf of the entire Loveland City Council as the leader of City Council.

## The Governor Petition

26. On or around April 19, 2023, Plaintiffs, who were all members of the Loveland City Council at the time, along with former City Council members, sent a letter to the Governor of Colorado in opposition to SB 23-273 (the "Governor Petition").

27. A copy of the Governor Petition is attached hereto as Exhibit 1.

28. The Governor Petition was sent by the petitioners in their capacity as private individual citizens, as well as their capacity as members of the Loveland City Council, expressing their personal views on public legislation.

29. The Governor Petition specifically stated that the petition was not a governmental act and further noted that the petition may or may not reflect the views of the entire Loveland City Council.

30. The Governor Petition also specifically states the "purpose of this letter is to express the views of members of the City Council of Loveland regarding SB 23-273."

3

31. The Governor Petition is signed by each Plaintiff as Members of the Loveland City Council.

32. The Governor Petition is printed on City of Loveland stationary.

33. The Governor Petition was signed by Plaintiffs Foley, McFall, and Olson, as well as other (now former) Loveland City Councilors.

### The House Petition

34. On April 27, 2023, members of the Loveland City Council, including Plaintiffs, sent a letter to the Colorado House of Representatives in opposition to SB 23-273 (the "House Petition").

35. A copy of the House Petition is attached hereto as Exhibit 2.

36. The House Petition was sent by the petitioners in their capacity as private individual citizens, as well as their capacity as Members of the Loveland City Council, expressing their personal views on public legislation.

37. The House Petition specifically stated that it was not a governmental act and further noted that the petition may or may not reflect the views of the entire Loveland City Council.

38. The House Petition states "The purpose of this letter is to express the bipartisan view of members of the City Council of Loveland regarding SB 23-273."

39. The House Petition is signed by Plaintiffs as Members of the Loveland City Council.

40. The House Petition is printed on City of Loveland stationary.

41. The House Petition was signed by all Plaintiffs, as well as other (now former) Loveland City Councilors.

42. The petitioners met one-on-one to sign both the House Petition and the Governor Petition.

### The Governor vetoes SB 23-273

43. On May 8, 2023, SB 23-273 was passed by the Colorado legislature.

44. On May 23, 2023, Governor Jared Polis vetoed SB 23-273.

### The Jensen Complaint

45. On December 20, 2023, Loveland resident Bill Jensen filed a Complaint against the Loveland City Council, arising out of the Governor Petition and the House Petition. See attached Exhibit 3, hereinafter the "Jensen Complaint".

4

46. On information and belief, at the time Mr. Jensen filed his Complaint, Mr. Jensen and Mayor Marsh lived together.

47. On February 6, 2024, the Loveland City Council moved to dismiss the Jensen Complaint to dismiss pursuant to C.R.C.P. 12(b)(5).

48. In his Complaint, Mr. Jensen alleged that the Governor Petition was a petition to veto SB 23-273 and the House Petition was a petition to oppose SB 23-273.  See attached Exhibit 3, at pg. 3.  Signing the petitions is alleged to violate COML.  Exhibit 3 at p. 4.

49. On March 22, 2024, Larimer County District Court Judge Carroll Brinegar entered an Order of Dismissal, dismissing Mr. Jensen's lawsuit against the Loveland City Council.

### **The official City policy of the Motion to Investigate**

50. On March 19, 2024, Loveland City Council member Troy Krenning successfully moved the Loveland City Council to appoint a special counsel, Christopher Gregory, to investigate the Plaintiffs related to the Governor Petition and the House Petition.

51. Prior to the meeting, Councilor Krenning put forward the following item to be included on the meeting agenda:  "I plan to discuss the Bill Jensen civil cases that have been filed against the City of Loveland alleging Colorado Open Meeting Law violations against four current and three former members of the Loveland City Council.  The pleadings filed by the city in the newest case suggest that in fact there were at least two violations of the COML.  If this is correct, then it goes to reason that the Loveland City Charter was also violated.  I will ask the Council to consider appointing special counsel to investigate this issue and report back to the council with findings, and if violations are concluded, for follow up action."  See Exhibit 4, Loveland City Council Meeting Agenda, March 19, 2024, p. 14.

52. On information and belief, "the pleadings filed by the city in the newest case", which Councilor Krenning, who is a licensed Colorado attorney, referenced in his agenda item, was the Motion to Dismiss, filed by the on February 6, 2024, which accepted Mr. Jensen's allegations as true for purposes of the Motion.

53. Councilor Krenning included three attachments to his proposed agenda item.

    a. A copy of the Governor Petition (Exhibit 4, pp. 15-16);
    b. A copy of the House Petition (Exhibit 4, pp. 17-18;
    c. A copy of a Motion to Dismiss filed in the *Jensen v. City of Loveland City Council*, Case No. 2022CV000166 (Exhibit 4, pp. 19-26).

54. The Governor Petition and the House Petition, as attachments to the proposed agenda item, are therefore the very matter that were subjected to investigation by Councilor Krenning's agenda item.

55. During the March 19, 2024 meeting, prior to discussion on Councilor Krenning's agenda item, Mayor Marsh admonished the Plaintiffs, stating: "we are going to have several people who

5

are going to have conflict of interest…you know, the first item is about correspondence, letters uh that were written in April 2023 to the Governor, to the House of Representatives…before we introduce the item, the item involved four of our current city councilors and three former city councilors, so we have four councilors that will I ask that they recuse themselves and leave the chambers so that they do not, um, influence any of the discussion by the remaining councilors."

56. Following this admonition, all Plaintiff's herein recused themselves from debate and vote on Councilor Krenning's agenda item. All but Plaintiff Olson left the chambers.

57. When introducing his agenda item to the remaining council members, Councilor Krenning specifically referenced Mr. Jensen's lawsuit, and admitted that it "looks like it is on its track to be dismissed in not too soon."

58. Councilor Krenning then moved to appoint a special counsel, independent of the city attorney's office, to investigate and look at the Jensen allegations and report back to counsel and to determine whether or not criminal action should be taken so that "we've investigated Mr. Jensen's complaints".

59. Specifically, Councilor Krenning's Motion was as follows:

> *that the Loveland City Council, exercising its authority under Loveland Charter section 9-1(h) retain Christopher Gregory, Esq., to investigate the complaints of Bill Jensen regarding alleged Colorado Open Meeting Law and Loveland Charter violations by former council member Rich Ball, Don Overcash, John Fogle, and current council members Andrea Samson, Pat McFall, Steve Olson, and Dana Foley and that Mr. Gregory report back to this council at the first meeting in April his findings and/or recommendations regarding these allegations; that the council authorize the expenditure of up to no more than $10,000 in fees for Mr. Gregory's services; that Mr. Gregory report directly to the Mayor and Mayor Pro Temp and other members of council that have been directed by the Mayor during this investigation phase; and that the services of Mr. Gregory be terminated at the time he delivers his initial report unless otherwise extended by a future motion of the city council.*

60. Councilor Krenning's motion was seconded by Loveland City Councilor Jon Malo.

61. During discussion on Councilor Krenning's motion to appoint special counsel, Mayor Marsh stated as follows: "during the election in November, the voters voted loud and clear on 301, and they basically were very unhappy about, in my opinion, the Centerra South URA. That is what prompted the ballot initiative, and it won by over 70% of the voters. So, they felt very strongly that declaring farmland blight and diverting taxes for 25 years was not in their best interest, so they took future decisions of new URAs and existing URAs out of the hands of this council and said 'you will come to us voters before you do this.' That makes violating open meeting laws to influence a decision by the governor to veto a bill, writing letters to the house of representatives, secretly convening a quorum and coming to a conclusion, and taking action, that

6

is the definition of open meeting law violation. They came to a consensus, and they took action, and we will never know if those letters did in fact in fact influence the Governor and he did in fact veto…so for that reason I support this investigation."

62. During discussion, Loveland City Council member Light-Kovacs expressed her agreement with "everything that was said," including those statements of Mayor Marsh and Councilor Krenning.

63. Councilor Krenning's Motion was approved by a vote of 5-0, with Mayor Jacki Marsh, Councilor Troy Krenning, Councilor Laura Light-Kovacs, Councilor Erin Black, and Councilor Jon Mallo voting in favor of the Motion. Hereafter, this will be referred to as the Motion to Investigate.

64. The Motion to Investigate is an official City policy to investigate Plaintiffs and recommend actions to the City regarding the allegations that the Governor Petition and the House Petition are criminal violations of the City Charter.

### The Gregory Report is the official recommendation of the official policy of the Motion to Investigate

65. As a result of this Motion to Investigate, Mr. Gregory was appointed as special counsel, charged with investigating whether Plaintiffs violated municipal criminal laws by expressing their views as private citizens or as members of the Loveland City Council in the Governor Petition and/or the House Petition.

66. On March 26, 2024, Mr. Gregory issued his report, attached as Exhibit 5 (The Gregory Report), which concluded that the Plaintiffs violated municipal criminal laws in relation to the Petitions.

67. The Gregory Report is the official recommendation of the official policy of the Motion to Investigate and thus is official policy pursuant to the Motion to Investigate. The Motion to Investigate is an official City policy to sanction and punish protected Free Speech and/or Petition activity, specifically, "circulating, conferring on, and collectively signing letters that lobbied Governor Polis and the Colorado House of Representatives to oppose then pending Senate Bill 23-273." Exhibit 5 at page 3. The Governor Petition and the House Petition are "public policy discussions" regarding the position as to SB 23-273. Exhibit 5 at p. 14.

68. The Gregory Report concluded that sanction and punishment was warranted for such Free Speech and/or Petition activity, as follows: "probable cause exists to suspect that the listed former and current Council members have willfully violated provisions of the Municipal Charter requiring actions taken by the City Council occur only at properly noticed regular and special meetings and that such meetings are open to the public." Exhibit 5, p. 1.

69. The Gregory Report found probable cause to suspect violations of §§ 4-2, 4-4, 4-5, and 15-7 of the Loveland Municipal Charter. Exhibit 5, p. 17.

7

70. If convicted, Plaintiffs would be required to be removed as sitting Council members and disqualified from ever seeking election to the City Council again.  See Exhibit 5, at p. 16.

71. The Gregory Report further stated that "probable cause further exists to suspect that the listed Council members have repeatedly and willingly violated § 2.14.020 of the Loveland Municipal Code (LCC) (Open Public Meetings Required)."  Exhibit 5, p. 1.  This provision provides that punishment is mandatory, as a violation "shall be punished …" by a fine or imprisonment or both."  LCC § 2.14.020(F).

72. The Gregory Report stated that "Counsel finds that there is probable cause to seek the prosecution of former and current Council members Ball, Overcash, Fogle, Samson, McFall, Olson, and Foley for violations of both the Loveland Municipal Charter and the Loveland Municipal Code" and that "it will be necessary for this City Council to ensure that outside conflict-free investigators, prosecutors, and adjudicators are appointed to guarantee a fair and transparent process."  See Exhibit 5, at p. 17.

73. The Gregory Report stated, "probable cause exists to seek the filing of criminal charges against Council members Ball, Overcash, Fogle, Samson, McFall, Olson, and Foley for their suspected violations of LCC § 2.14.020."  Exhibit 5, at p. 18.  This is a sanction and punishment for "signing the April 2023 letters …"  Exhibit 5 at p. 3.

74. If convicted, Plaintiffs would face a $300 fine and up to 90 days in jail. Exhibit 5, at p. 17.

75. The Gregory Report specifically notes that despite the dismissal of 23CV246, the alleged COML violations for sending first a letter to the Governor and then a second letter to the House opposing then-pending SB 23-273 are not moot and not barred by the statute of limitations.  Exhibit 5 at p.  2 n. 2; and p. 4.  This sanction and punishment is for "circulating, conferring on, and collectively signing letters that lobbied Governor Polis and the Colorado House of Representatives to oppose then pending Senate Bill 23-273."  Exhibit 5 at p. 3.

76. The Gregory Report specifically notes the Governor Petition was successful.  Exhibit 5 at p. 4.  The Gregory Report found the purpose of the Governor Petition and the House Petition was to influence a legislative outcome regarding SB 23-273.  Exhibit 5 at p. 16.

### The official City policy of the Motion to Prosecute

77. On March 22, 2024, before Mr. Gregory had ever issued his report, Mayor Marsh requested and the Loveland City Council convened a special meeting for the purpose of reviewing the findings of Mr. Gregory's report.

78. On March 26, 2024, Mr. Gregory presented his findings in front of City Council.

79. This meeting occurred before any of the Plaintiffs received a copy of The Gregory Report.

80. During the discussion, Mayor Marsh specifically inquired "do you think, you know there were uh two letters sent – one to the Governor and one to the House of Representatives – do you think, um, we know it passed the house, we know it passed the senate, do you think it had influence on the Governor, because he ultimately vetoed Senate Bill 23-273?"

81. At the March 26 meeting, the City Council scheduled another Special Meeting for March 29, 2024 to allow more time to review the Investigation Report, discuss the findings, and potentially take action.  See Exhibit 6, Loveland City Council Meeting Agenda, March 29, 2024, Agenda Item No. 3.1.

82. At the March 29, 2024 meeting, Mayor Marsh stated "I think the ramifications of that pre-decision are huge.  It is $155 million of tax money over the next 25 years.  I think we heard from the public during comments in those meetings back last year that they were vehemently opposed to Centerra South getting those tax subsidies for 25 years…."

83. During the March 29 meeting, Mayor Marsh also cited to examples of prior violations of the open meeting sections of the Loveland City Charter and the Loveland Municipal Code that occurred during the time she was Mayor.  On information and belief, these alleged violations were neither investigated nor prosecuted.

84. At the March 29, 2024 meeting, Councilor Black made the following Motion: "I would move that council hire Kathy Haddock as a special prosecutor in regards to the report given to us by, by Gregory."

85. The Motion was seconded by Councilor Light-Kovacs.

86. During discussion on the Motion, Mayor Marsh made the following statement:  "the governor did veto it.  So, there we have $155 million in tax money is subject to be given to a developer.  But there's greater ramifications.  The Governor's veto affects every single city in the state of Colorado.  Other cities are going to deal with this, where you take land out of a URA, where that developer has had preferential treatment for 10, 20, almost 25 years, and you're going to give him a new 25 year period.  That Governor's veto affects more than the city of Loveland, it is a statewide concern.  That's why URA law is a statewide concern.  That veto hurts not only the people of Loveland in this instant, by approving Centerra South URA, but every city could not have a problem with this.  So it's a serious issue.  I gave you an example of earlier of what they did, you know, kept people not just me, but other people off boards and commissions.  This is far more serious than that.  This has major ramifications – to the taxpayers of Loveland, to the city of Loveland, and to every city in the state of Colorado.  It should not have happened this way…so, I will certainly support this Motion."

87. The Motion passed 5-0, approved by a vote of 5-0, with Mayor Jacki Marsh, Councilor Troy Krenning, Councilor Laura Light-Kovacs, Councilor Erin Black, and Councilor Jon Mallo voting in favor of the Motion.  Hereafter, this will be referred to as the Motion to Prosecute.

9

88. Thus, during the March 29, 2024 meeting, former Boulder city attorney Kathy Haddock was appointed by Defendants to serve as special prosecutor to prosecute the criminal charges against the Plaintiffs.

### The Special Prosecutor finds a lack of probable cause

89. On April 14, 2024, Ms. Haddock issued a letter to the Loveland City Council explaining that she was declining to pursue criminal charges against the Plaintiffs, attached as Exhibit 7 (The Haddock Report).

90. The Haddock Report found that the actions alleged by the Defendants did not constitute a violation of the Colorado Open Meetings Law and, thus, did not constitute a violation of the Loveland City Charter.

91. Plaintiffs affirmatively allege that the charges detailed in the Motion to Investigate, the Gregory Report, and the Motion to Prosecute, lacked probable cause. Plaintiffs incorporate The Haddock Report's finding of a lack of probable cause.

### The Loveland City Council has not investigated or prosecuted any other alleged violations of the Loveland City Charter by members of the City Council

92. On June 4, 2024, a lawsuit was filed in Larimer County District Court – *Ball v. City of Loveland*, 2024CV30466 – alleging willful violations of the Loveland City Charter by Mayor Marsh, Councilor Krenning, Councilor Mallo, Councilor Light-Kovacs, and Councilor Black.

93. The Loveland City Council has not investigated or prosecuted any of these alleged violations of the City Charter pursuant to § 15-7 of the Charter.

94. On June 4, 2024, a lawsuit was filed in Larimer County District Court – *Gazlay v. City of Loveland*, 2024CV30469 – alleging willful violations of the Loveland City Charter by Councilor Troy Krenning.

95. The Loveland City Council has not investigated or prosecuted this alleged violation of the City Charter pursuant to § 15-7 of the Charter.

96. On information and belief, the Loveland City Council has not investigated or prosecuted alleged violations of §§ 4-2, 4-4, and/or 4-5 of the Charter in at least the last 10 years, if ever.

97. On information and belief, the Loveland City Council has not investigated or prosecuted alleged violations of § 2.14.020 of the Loveland Municipal Code in at least the last 10 years, if ever.

### Damages

98. All Plaintiffs incurred damages as a result of the Motion to Investigate, the Gregory Report, and the Motion to Prosecute as Plaintiffs retained counsel to represent them as a direct result of the policies.

## FIRST CLAIM FOR RELIEF
### (First Amendment Violation under 42 U.S.C. § 1983)
### Unlawful City Policy to Sanction and Punish Right of Petition

99. Plaintiffs incorporate by reference all of the allegations set forth above.

100. At all times relevant hereto, Plaintiffs were engaged in the constitutionally protected activity of petitioning the Colorado Governor and Legislature to express their views on statewide legislation.

101. Loveland, through its city councilmembers, formed an official policy to retaliate against Plaintiffs by sanctioning and punishing the right to petition. The official policy is the Motion to Investigate, the Gregory Report, and the Motion to Prosecute. The official policy is to appoint an investigator and prosecutor to investigate and prosecute Petitions sent to the Governor and the House as criminal activity under both the Loveland Municipal Charter and the Loveland Municipal Code.

102. The official city policy caused the Plaintiffs to be subjected to a denial of a constitutional right.

103. The official policy of the Motion to Investigate, the Gregory Report, and the Motion to Prosecute seeks to criminalize citizen petition activity based on viewpoint, that is, the official policy is a sanction and punishment for the viewpoint advocated by the Petitions regarding opposition to SB 23-273.

104. As set forth above, the official city policy of the Motion to Investigate, the Gregory Report, and the Motion to Prosecute is a sanction and punishment against Plaintiffs by pursuing criminal charges against them for engaging in their constitutionally protected right to petition the government by signing the Governor and House Petitions.

105. Criminal prosecution, the threat of jail time, and a civil fine are actions that would chill a person of ordinary firmness from continuing to engage in the constitutionally protected right to petition the government.

106. The Motion to Prosecute's appointment of a special prosecutor to criminally prosecute the Plaintiffs is a sanction and punishment for Plaintiffs' exercise of their constitutionally protected right to petition the government.

107. The Motion to Investigate's appointment of special counsel to investigate the Plaintiffs is a sanction and punishment for the Plaintiffs' expression of the viewpoint in opposition to SB 23-273.

108. The official policy of the Motion to Investigate, the Gregory Report, and the Motion to Prosecute seek to sanction and punish the Plaintiffs for petitioning in opposition to SB 23-273 and supporting the Centerra South Proposal. Therefore, the official City policy seeks to sanction and punish petition activity based on viewpoint.

109. The criminal charges that the official policy of the Motion to Investigate, the Gregory Report, and the Motion to Prosecute pursued against Plaintiffs arose out of the one-on-one meetings where Plaintiffs discussed and signed the Governor and House Petitions and, thus, were directly connected to the constitutionally protected right to petition the government regarding a matter of public concern.

110. As a result of the official policy to sanction and punish Plaintiffs, they suffered injuries that would chill a person of ordinary firmness from continuing to engage in the constitutionally protected right to petition the government.

111. At all times relevant hereto, the actions of the official city policy of the Motion to Investigate, the Gregory Report, and the Motion to Prosecute were done under color of State law.

112. As a direct and proximate result of the official city policy of the Motion to Investigate, the Gregory Report, and the Motion to Prosecute, Plaintiffs suffered injuries and damages, which shall be proven at trial.

113. Accordingly, Plaintiffs requests a declaration pursuant to 42 U.S.C. § 1983, that Defendant, acting under color of the Motion to Investigate, the Gregory Report, and the Motion to Prosecute, and pursuant to official policy or custom, deprived Plaintiffs of their right to freedom of petition and expression pursuant to U.S. Const. amend. I and XIV; and so acting under color law, deprived Plaintiffs of their rights, privileges, and immunities secured by the Constitution and Laws of the United States.

114. The depravation of Plaintiffs constitutional rights caused injury and damage, compensable to Plaintiffs by Defendant pursuant to 42 U.S.C. § 1983, in amounts to be determined.

115. The depravation of Plaintiffs constitutional rights entitles Plaintiffs to attorney fees and costs pursuant to 42 U.S.C. § 1988, in amounts to be determined.

## SECOND CLAIM FOR RELIEF
**(First Amendment Violation under 42 U.S.C. § 1983)**
**Unlawful City Policy to Sanction and Punish Elected Representatives for Speaking and Petitioning on Questions of Government Policy**

116. Plaintiffs incorporate by reference all of the allegations set forth above.

117. The First Amendment of the United States Constitution protects elected representatives, such as Plaintiffs, all of whom are Loveland City Councilors, from sanction and punishment for exercising their right to free and protected speech on questions of government policy, and from petitioning on questions of government policy.

118. The Governor Petition and the House Petition were about state legislation on which the City has no policy making function.

119. SB 23-273 was public legislation and of high interest to the Loveland community.

120. SB 23-273, therefore, was a matter of public concern.

121. The Plaintiffs' interest in freedom of expression and the right to petition is at its zenith where the matter is of public concern.

122. The City formed an official policy to sanction and punish Plaintiffs. The official policy is the Motion to Investigate, the Gregory Report, and the Motion to Prosecute. The official policy is to appoint an investigator and prosecutor to investigate and prosecute Petitions sent to the Governor and the House as criminal activity under both the Loveland Municipal Charter and the Loveland Municipal Code.

123. The official policy of the Motion to Investigate, the Gregory Report, and the Motion to Prosecute seek to criminalize exercising their right to free and protected speech and petition activity on questions of government policy as City Council Members based on viewpoint, that is, the official policy is a sanction and punishment for the viewpoint advocated by the Petitions regarding opposition to SB 23-273.

124. The official city policy of the Motion to Investigate, the Gregory Report, and the Motion to Prosecute, is a sanction and punishment against Plaintiffs for exercising their First Amendment rights to speak freely and to petition as Loveland City Councilors about SB 23-273.

125. The official city policy caused the Plaintiffs to be subjected to a denial of a constitutional right to expression and the right to petition.

126. As a result of the official policy to sanction and punish Plaintiffs, they suffered injuries that would chill a person of ordinary firmness from continuing to engage in the constitutionally protected right to free and protected speech and to petition on questions of government policy as elected representatives.

127. Criminal prosecution, the threat of jail time, and a civil fine are actions that would chill an elected representative from continuing to engage in the constitutionally protected right to free and protected speech and to petition on questions of government policy.

128. The Motion to Investigate's appointment of special counsel to investigate the Plaintiffs is a sanction and punishment for the Plaintiffs' expression of the viewpoint in opposition to SB 23-273.

129. The Motion to Prosecute's appointment of a special prosecutor to criminally prosecute the Plaintiffs is a sanction and punishment for Plaintiffs' exercise of their First Amendment rights to speak freely as Loveland City Councilors about SB 23-273.

130. As a direct result of the official city policy of the Motion to Investigate, the Gregory Report, and the Motion to Prosecute, Plaintiffs suffered injuries and damages in an amount to be determined at trial.

131. Accordingly, Plaintiffs request a declaration pursuant to 42 U.S.C. §1983, that Defendant, acting under color of the Motion to Investigate, the Gregory Report, and the Motion to Prosecute, and pursuant to official policy or custom, deprived Plaintiffs of their right to freedom of petition and expression pursuant to U.S. Const. amend. I and XIV; and so acting under color law, deprived Plaintiffs of their rights, privileges, and immunities secured by the Constitution and Laws of the United States.

132. The depravation of Plaintiffs constitutional rights caused injury and damage, compensable to Plaintiffs by Defendant pursuant to 42 U.S.C. § 1983, in amounts to be determined.

133. The depravation of Plaintiffs constitutional rights entitles Plaintiffs to attorney fees and costs pursuant to 42 U.S.C. § 1988, in amounts to be determined.

**THIRD CLAIM FOR RELIEF**
**(§§ 15-7 and 4-4 of the Loveland City Charter is Unconstitutional)**

134. Plaintiffs incorporate by reference the foregoing paragraphs, as if restated herein in their entirety.

135. The First Amendment of the United Sates Constitution, as applied to the States and their political subdivisions through the Fourteenth Amendment of the United States Constitution, protects a citizen from being sanctioned or punished by a governmental entity or individual acting in his or her official capacity as an agent of that governmental entity, because of said citizen's exercise of free speech or petition to the government.

136. Article II, § 10 of the Colorado Constitution guarantees Colorado citizens the same rights guaranteed by the First Amendment of the United States Constitution.

137. Section 4-4 of the Loveland City Charter provides that "all regular and special meetings of the Council shall be open to the public, and persons shall have a reasonable opportunity to be heard at each meeting under such rules as the Council may prescribe."

138. Section 15-7 of the Loveland City Charter provides that "any willful violation of a provision of this Charter shall be deemed a misdemeanor and may be prosecuted in the Municipal Court. Any person convicted of such a violation may be punished by imprisonment for a term not to exceed the maximum term of imprisonment that the Municipal Court is authorized to impose pursuant to Section 4-14, by a fine in an amount not to exceed the maximum fine that the Municipal Court is authorized to impose pursuant to Section 4-14, or by both such fine an imprisonment."

139. In contrast to Colorado's Open Meetings Law, C.R.S. § 24-6-402, the Loveland City Charter does not define the term "meeting," or limit the definition of the term "meeting" discussion of public business.

140. As applied in this case, §§ 15-7 and 4-4 of the Loveland City Charter is unconstitutional as it was used to sanction and punish Plaintiffs herein for exercising their right to petition the government and speak freely on matters of public concern.

141. As applied in this case, §§ 15-7 of the Loveland City Charter is an impermissible infringement and abridgement of Plaintiffs' right to free speech and right to petition the government under the First and Fourteenth Amendments of the United States Constitution and Article II, § 10 of the Colorado Constitution.

142. On its face, § 15-7 of the Loveland City Charter is facially invalid because it infringes on the rights guaranteed by the First Amendment to the United States Constitution and Article II, § 10 of the Colorado Constitution.

143. On its face, § 15-7 of the Loveland City Charter is facially invalid because it is unconstitutionally vague in that it is not clear and explicit about what conduct is prohibited and punishable in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

144. Accordingly, Plaintiffs request a declaration pursuant to 42 U.S.C. §1983, that Defendant, acting under color of § 15-7 of the Loveland City Charter, and pursuant to official policy or custom, deprived Plaintiffs of their right to freedom of petition and expression pursuant to U.S. Const. amend. I and XIV; and so acting under color law, deprived Plaintiffs of their rights, privileges, and immunities secured by the Constitution and Laws of the United States.

145. The depravation of Plaintiffs constitutional rights caused injury and damage, compensable to Plaintiffs by Defendant pursuant to 42 U.S.C. § 1983, in amounts to be determined.

146. The depravation of Plaintiffs constitutional rights entitles Plaintiffs to attorney fees and costs pursuant to 42 U.S.C. § 1988, in amounts to be determined.

**FOURTH CLAIM FOR RELIEF**
**(As applied and facial challenge to LCC § 2.14.020)**

147. Plaintiffs incorporate by reference the foregoing paragraphs, as if restated here in in their entirety.

148. The First Amendment of the United Sates Constitution, as applied to the States and their political subdivisions through the Fourteenth Amendment of the United States Constitution, protects a citizen from being sanctioned or punished by a governmental entity or individual acting in his or her official capacity as an agent of that governmental entity, because of said citizen's exercise of free speech or petition to the government.

15

149. Article II, § 10 of the Colorado Constitution guarantees Colorado citizens the same rights guaranteed by the First Amendment of the United States Constitution.

150. Section 2.14.020 of the Loveland Municipal Code provides that "all meetings of a quorum of any board, committee, commission, or other policymaking or rulemaking body of any agency or authority of the city, or city council, at which any public business is discussed is declared to be a public meeting open to the public at all times except as otherwise provided in this section…any person who willfully or knowingly violates any of the provisions of this section is guilty of a violation of this section and shall be punished by a fine of not less than $25.00 nor mote than $300.00 or by imprisonment not to exceed 90 days, or by both such fine and imprisonment."

151. As applied in this case, LMC § 2.14.020 is unconstitutional as it was used to sanction and punish Plaintiffs herein for exercising their right to petition the government and speak freely on matters of public concern.

152. As applied against the Plaintiffs, LMC § 2.14.020 is an impermissible infringement and abridgement of Plaintiff's right to free speech and right to petition the government under the First and Fourteenth Amendments of the United States Constitution and Article II, § 10 of the Colorado Constitution.

153. On its face, LMC § 2.14.020 is facially unconstitutional because it infringes on the rights guaranteed by the First Amendment to the United States Constitution and Article II, § 10 of the Colorado Constitution.

154. On its face, LMC § 2.14.020 is facially unconstitutional because it seeks to criminally punish and imprison individuals for exercising their right to free speech, assembly, and petition, as guaranteed by the First Amendment, incorporated to the states through the Fourteenth Amendment, and Article II, § 10 of the Colorado Constitution

155. Accordingly, Plaintiffs request a declaration pursuant to 42 U.S.C. §1983, that Defendant, acting under color of LMC § 2.14.020, and pursuant to official policy or custom, deprived Plaintiffs of their right to freedom of petition and expression pursuant to U.S. Const. amend. I and XIV; and so acting under color law, deprived Plaintiffs of their rights, privileges, and immunities secured by the Constitution and Laws of the United States.

156. The depravation of Plaintiffs constitutional rights caused injury and damage, compensable to Plaintiffs by Defendant pursuant to 42 U.S.C. § 1983, in amounts to be determined.

157. The depravation of Plaintiffs constitutional rights entitles Plaintiffs to attorney fees and costs pursuant to 42 U.S.C. § 1988, in amounts to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor as follows:

A. Declaratory relief declaring the official city policy of the Motion to Investigate, The Gregory Report, and the Motion to Prosecute unconstitutional facially and as applied;
B. Declaratory relief declaring the official city policy of LMC § 2.14.020 unconstitutional facially and as applied
C. Declaratory relief declaring the official city policy of § 15-7 of the Loveland City Charter unconstitutional facially and as applied;
D. Declaratory relief declaring the official policy of LMC § 2.14.020 unconstitutionally facially and as applied;
E. Injunctive relief prohibiting enforcement of the official city policy of the Motion to Investigate, The Gregory Report, and the Motion to Prosecute;
F. Injunctive relief prohibiting enforcement of the official city policy of § 15-7 of the Loveland City Charter;
G. Injunctive relief prohibiting enforcement of the official city policy of LMC § 2.14.020;
H. Reasonable attorney's fees and costs of this action as permitted under federal and state law and in particular 42 U.S.C. § 1988;
I. Statutory pre-and post-judgment interest; and
J. Such other and further relief as the court deems proper in the circumstances.

## JURY DEMAND

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL CLAIMS AND ISSUES SO TRIABLE.**

Dated this 27th day of August 2024.

Respectfully submitted,

s/ *John S. Zakhem*____
John S. Zakhem
Andrew Nickel
CKBR, LLC
270 N. St. Paul Street, Ste. 200
Denver, CO 80206
Ph.: 303-322-7203
Fax: 303-322-5800
Jzakhem@ckbrlaw.com
Andrew.nickel@ckbrlaw.com
*Attorney for Plaintiffs*