IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 24-cv-02370-NYW-STV

DANA FOLEY,
ANDREA SAMSON,
STEVE OLSON, and
PAT MCFALL,

    Plaintiffs,

v.

THE CITY OF LOVELAND,

    Defendant.

## ORDER

This matter is before the Court on Defendant's Motion to Dismiss (or "Motion"), [Doc. 10, filed October 28, 2024]. Plaintiffs responded ("Response"), [Doc. 21, filed December 9, 2024], and Defendant replied ("Reply"), [Doc. 34, filed January 6, 2025]. The Motion is therefore ripe for review. For the reasons set forth in this Order, the Motion to Dismiss is respectfully **GRANTED in part** and **RESERVED in part**. The Court further issues an **ORDER to SHOW CAUSE** as to why Plaintiffs' claims under a theory of content and viewpoint discrimination should not be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

**I.**    **Factual Background**

The following facts are drawn from Plaintiffs' operative Amended Complaint and

Jury Demand ("Amended Complaint"),[1] [Doc. 30], and taken as true for the purpose of this Order.  Plaintiffs Dana Foley ("Mr. Foley"), Andrea Samson ("Ms. Samson"), Steven Olson ("Mr. Olson"), and Pat McFall ("Mr. McFall") (collectively, "Plaintiffs") were members of the Loveland City Council ("City Council") at all times relevant to this lawsuit.  [*Id.* at ¶¶ 1–4].  Defendant City of Loveland ("Defendant" or "City") is a Colorado municipal corporation.  [*Id.* at ¶ 5].  The City Council is the governing body of the City of Loveland.  [*Id.* at ¶ 8].  In January 2004, the City Council passed a resolution approving two projects related to a parcel of land known as Centerra ("Centerra"):  (1) the Centerra Master Financing and Intergovernmental Agreement ("2004 Centerra MFA"); and (2) the US 34/Crossroads Corridor Renewal Plan ("Crossroads Plan").  [*Id.* at ¶ 13].  In August 2022, the developer of the Centerra MFA proposed carving out an undeveloped portion of the Centerra land to create a new Master Financing and Intergovernmental Agreement ("2022 Centerra MFA").  [*Id.* at ¶ 17].  On May 16, 2023, the City Council approved the 2022 Centerra MFA.  [*Id.* at ¶ 20].

The Mayor of Loveland, Jacki Marsh ("Ms. Marsh"), opposed the 2022 Centerra MFA and sought to develop statewide legislation to halt the 2022 Centerra MFA and the related development of Centerra.  [*Id.* at ¶¶ 16, 21].  Colorado State Senator Janice Marchman introduced proposed legislation on April 10, 2023 ("SB 23-273").  [*Id.* at ¶ 22].  SB 23-273 was designed to prevent the passage of the 2022 Centerra MFA and halt the

---

[1] Plaintiffs reference, but do not re-attach, Exhibits 1–8 of the original Complaint. Accordingly, this Court refers to the exhibits as filed with the original Complaint, as well as the amended Exhibit 7 that Plaintiffs submitted separately pursuant to a Notice of Filing on December 9, 2024.  [Doc. 22; Doc. 22-1].  And because these exhibits are central to the Amended Complaint and their authenticity is not disputed, this Court may consider such documents without converting a motion to dismiss to one for summary judgment. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

2

development of Centerra. [*Id.* at ¶ 23]. Ms. Marsh testified before the Colorado Senate in support of SB 23-273 and indicated that she spoke on behalf of the entire City Council. [*Id.* at ¶ 25].

On April 19, 2023, in their capacity as private citizens and as members of the Loveland City Council, Plaintiffs sent a letter to the Governor of Colorado opposing SB 23-273 and "expressing their personal views on public legislation" ("Governor Petition"). [*Id.* at ¶¶ 26–33]. This Petition is on City of Loveland letterhead. [Doc. 1-3]. The Governor Petition stated that it was not a governmental act and that it may or may not have reflected the views of the entire City Council, but that its purpose was "to express the views of members of the City Council of Loveland regarding SB 23-273." [Doc. 30 at ¶¶ 29–30; Doc. 1-3 at 2]. Mr. Foley, Mr. McFall, and Mr. Olson signed the Governor Petition. [Doc. 30 at ¶ 33; Doc. 1-3 at 3].

On April 27, 2023, Plaintiffs sent a letter to the Colorado House of Representatives opposing SB 23-273 ("House Petition" and collectively with the Governor Petition, "Petitions"). [Doc. 30 at ¶¶ 34–42]. The House Petition stated it was not a governmental act and may or may not have reflected the views of the entire City Council. [*Id.* at ¶ 37]. The House Petition was designed to express the bipartisan "view of City Council members of Loveland regarding SB 23-273." [*Id.* at ¶ 38]. Plaintiffs signed the House Petition as members of the Loveland City Council. [*Id.* at ¶ 39]. On May 8, 2023, the Colorado Legislature passed SB 23-273, but on May 23, 2023, Governor Jared Polis vetoed SB 23-273. [*Id.* at ¶¶ 43–44].

On December 20, 2023, Bill Jensen ("Mr. Jensen"), a Loveland resident, filed a complaint against the City Council in Larimer County District Court alleging claims arising

3

out of the Petitions ("Jensen Complaint"). [*Id.* at ¶¶ 45–49]. Mr. Jensen alleged that the Petitions were petitions to veto SB 23-273 and that signing the petitions violated the Colorado Open Meetings Law (or "COML"). [*Id.* at ¶ 48]; *see also* Colo. Rev. Stat. §§ 24-6-401 to -402. On March 22, 2024, Larimer County District Court Judge Carroll Brinegar dismissed the case against the City Council. [Doc. 30 at ¶ 49].

On March 19, 2024, City Council member Troy Krenning ("Mr. Krenning") moved the City Council to appoint special counsel, Christopher Gregory ("Mr. Gregory"), to investigate Plaintiffs and their actions related to the Petitions ("Motion to Investigate"). [*Id.* at ¶ 50]. Mr. Krenning stated that because the Jensen Complaint alleged violations of the COML, "it goes to reason that the Loveland City Charter was also violated." [*Id.* at ¶ 51]. Mr. Gregory investigated whether Plaintiffs violated the municipal criminal laws by expressing their views as private citizens or as members of the Loveland City Council. [*Id.* at ¶ 65]. On March 26, 2024, Mr. Gregory issued his report ("Gregory Report"), finding that probable cause existed to support Plaintiffs' violations of the Loveland Municipal Code and the Loveland Municipal Charter. [*Id.* at ¶¶ 66, 69, 71]. Mr. Gregory further concluded that probable cause existed to seek "seek the prosecution of former and current Council members . . . [Ms.] Samson, [Mr.] McFall, [Mr.] Olson, and [Mr.] Foley." [*Id.* at ¶ 72]. Mr. Gregory presented his findings to City Council on March 26, 2024, before Plaintiffs received a copy of the Gregory Report. [*Id.* at ¶¶ 78–79]. If convicted of the potential charges indicated in the Gregory Report, Plaintiffs would have faced a $300 fine and up to 90 days in jail, removal from City Council, and disqualification from serving or seeking election to the City Council in the future. [*Id.* at ¶¶ 70, 74].

On March 29, 2024, a member of the City Council moved to hire Kathy Haddock

4

("Ms. Haddock") as a special prosecutor to investigate and potentially prosecute criminal charges against Plaintiffs ("Motion for Special Prosecutor"). [*Id.* at ¶¶ 84, 88]. On April 14, 2024, Ms. Haddock issued a letter to City Council stating that she declined to pursue criminal charges against Plaintiffs because Plaintiffs' actions did not constitute a violation of the COML or the Loveland City Charter ("the Haddock Report"). [*Id.* at ¶¶ 89–90].

## II.  Procedural Background

Plaintiffs initiated this action on August 27, 2024 and filed the operative Amended Complaint on December 13, 2024. [Doc. 1; Doc. 30].[2] Though not a model of clarity, Plaintiffs' Amended Complaint identifies two causes of action arising under the First Amendment and 42 U.S.C. § 1983, alleging that the Motion to Investigate, Gregory Report, and Motion for Special Prosecutor constituted an "official policy" to "retaliate against Plaintiffs by sanctioning and punishing the right to petition" ("Count I"), [Doc. 30 at ¶¶ 99–115], and "sanction and punish Plaintiffs" for "exercising their right to free and protected speech and petition activity on questions of government policy as City Council Members based on viewpoint" ("Count II"), [*Id.* at ¶¶ 116–33].[3] Plaintiffs contend that they suffered damages as a result of the Official Policy, as "Plaintiffs retained counsel to represent them as a direct result of the policies." [*Id.* at ¶ 98]. They seek a declaration that the Official Policy is unconstitutional facially and as applied; injunctive relief

---

[2] Plaintiffs filed Plaintiffs' Unopposed Motion for Leave to File Amended Complaint ("Motion to Amend") with evidence of Defendant's written consent, [Doc. 27]; *see* [Doc. 27-1]. The Court construed Plaintiffs' Motion to Amend as an amendment as a matter of right pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure and directed Plaintiffs to file a clean copy of the First Amended Complaint, [Doc. 27-4], as a separate docket entry, [Doc. 29; Doc. 30].

[3] Plaintiffs have not asserted any claims against any of the individual members of the City Council or mayor of Loveland. *See* [Doc. 30].

prohibiting the enforcement of the official city policy of the Motion to Investigate, the Gregory Report, and the Motion to Prosecute;[4] damages pursuant to 42 U.S.C. § 1983 in amounts to be determined; reasonable attorney's fees and costs; and statutory pre- and post-judgment interest.  See [id. at 14].

In the Motion, the City seeks dismissal both causes of action of the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6).[5]  [Doc. 10 at 1–7].

## LEGAL STANDARDS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  Casanova v. Ulibarri, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted).  The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter,

---

[4] It is not clear how this requested injunctive relief is not moot, in light of the other allegations in the Amended Complaint and the Haddock Report.

[5] Originally, Plaintiffs brought two additional causes of action that were subject to a subject matter jurisdiction challenge pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  [Doc. 10 at 3, 8–11].  In a Stipulation Concerning Defendant the City of Loveland's Motion to Dismiss ("Joint Stipulation") [Doc. 26 at ¶ 3], the Parties stated that "Plaintiffs['] First Amended Complaint removes the Third Claim for Relief (§§ 15-7 and 4-4 of the Loveland City Charter is Unconstitutional) and Fourth Claim for Relief (as applied and facial challenge to LCC § 2.14.020), without prejudice and Plaintiffs' Response confirms that Claims Three and Four were voluntarily dismissed without prejudice.  [Doc. 21 at 1].  Accordingly, the Parties agree that the City's subject matter jurisdiction challenge is moot.  [Doc. 26 at ¶ 5].

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## ANALYSIS

A municipality can be liable under § 1983 if it took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To state a cognizable claim, a plaintiff suing a municipality under § 1983 must allege: (1) a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *See Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).

Plaintiffs identify two theories of liability: (1) retaliation and (2) content and viewpoint discrimination resulting in violations of their First Amendment rights to petition and to free speech. [Doc. 21 at 2–4]; *see also* [Doc. 30]. "[T]he First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech." *Lozman v. Riviera Beach*, 585 U.S. 87, 90 (2018). The right to petition is also a protected First Amendment right. *Id.* at 101. Though separate guarantees, Plaintiffs do not argue that each right is burdened differently, but rather, Defendant's Official Policy burdens both. *See* [Doc. 30]. In fact, Count II is characterized as "Unlawful City Policy to Sanction and Punish Elected Representatives for Speaking and Petitioning on Questions of Government Policy." [*Id.* at 12]. Accordingly, like other courts, this Court treats the right to petition and the right to free speech asserted by Plaintiffs as related and subject to the same constitutional analysis. *See Wayte v. United States*, 470 U.S. 598, 610 n. 11 (1985) (citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982)); *Schalk v. Gallemore*, 906 F.2d 491, 498 (10th Cir. 1990).

7

Defendant's Motion to Dismiss is not directed at the second prong of the *Monell* analysis.[6]  Rather, Defendant argues that Plaintiffs' theory of retaliation cannot survive because even accepting the facts as pleaded, Plaintiffs have not suffered an adverse action, and in turn, a cognizable First Amendment violation.  [Doc. 10 at 3–7; Doc. 34 at 2].  Defendant further contends that Plaintiffs' theory of content and viewpoint discrimination is essentially simply a restatement of their retaliation theory, and thus, fails for the same reason.  [Doc. 34 at 2].

**I.   Retaliation Theory**

Defendant argues that Plaintiffs' claims should be dismissed because Plaintiffs fail to plead that either of the City Council Motions amounts to an adverse action sufficient to state a cognizable First Amendment claim for retaliation.[7]  [Doc. 10 at 2].  Plaintiffs respond that the City's Official Policy "targeted" the Petitions for investigation and "thus constitute[s] an adverse action that was substantially motivated as a response to . . . Plaintiffs' exercise of constitutionally protected conduct."  [Doc. 21 at 15].

**A.   *Pickering/Garcetti* Test or *Worrell* Test**

As a preliminary matter, the Court addresses the Parties' arguments regarding the tests courts apply in First Amendment retaliation cases.  When analyzing a First Amendment retaliation claim, courts apply one of two tests.  *Hedquist v. Beamer*, 763 F.

---

[6] For instance, Defendant does not challenge whether Plaintiffs sufficiently plead that the Motion to Investigate, Gregory Report, and Motion for Special Prosecutor taken together can constitute "an official municipal policy," or whether such Official Policy was the moving force behind Plaintiffs' alleged constitutional harm.  *See* [Doc. 10; Doc. 34].

[7] The Court notes that Defendant refers to the "May 19, 2024 City Council decision."  [Doc. 10 at 3].  The original and Amended Complaint discuss the City Council Motions as taking place on various dates in March 2024.  *See, e.g.*, [Doc. 1 at ¶ 50; Doc. 30 at ¶¶ 50, 84].  The Court attributes Defendant's reference to the May 19, 2024 meeting to a typographical error.

8

App'x 705, 711 (10th Cir. 2019).  If the First Amendment claim rests on retaliation by a government employer, courts apply the test outlined in *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968) and *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) ("*Pickering/Garcetti* test").  *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014).  However, when a plaintiff brings claims against "a defendant who is not the plaintiff's employer and . . . there is no contractual relationship between them," courts apply the test outlined in *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000) ("*Worrell* test").  *Worrell*, 219 F.3d at 1212; *Knopf v. Williams*, 884 F.3d 939, 945 n.4 (10th Cir. 2018).

Here, Plaintiffs contend that the *Worrell* test applies because Defendant is not Plaintiffs' employer and Plaintiffs are elected public officials, not government employees. [Doc. 21 at 5–6].  Further, Plaintiffs argue that "the line of cases cited by Defendant only applies to *Pickering*[*/Garcetti*] cases."  [*Id.* at 2, 5–8].  Defendant does not appear to contest that the *Worrell* test applies nor expressly assert that the *Pickering/Garcetti* test applies.  *See* [Doc. 10]; [Doc. 34 at 2–7].  Instead, Defendant argues that even under *Worrell*, an adverse action is an element necessary to state a cognizable First Amendment claim.  [Doc. 34 at 3–9].

This Court respectfully agrees that the *Pickering/Garcetti* standard does not apply because Plaintiffs are elected officials, not government employees.[8]  *See Peters v. United States*, No. 24-1013, 2024 WL 3086003, at *1 n.3 (10th Cir. June 21, 2024); *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trs.*, 235 F.3d 1243, 1247 (10th Cir. 2000).  But to the

---

[8] The Court takes judicial notice of the fact that Loveland city council members are elected.  *See* Fed. R. Evid. 201(b); Colo. Const. art. XX, § 6 (vesting authority in city council for home rule cities and towns); Colo. Rev. Stat. § 31-4-105 (providing for the election of city council members); Loveland, Colo., Mun. Charter § 3-1 (2023), https://www.lovgov.org/home/showdocument?id=60315&t=638411007419041130.

extent that Plaintiffs suggest that they need not plead an adverse action in order to state a cognizable First Amendment violation under *Worrell*, this Court respectfully disagrees. The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") set out the following framework for First Amendment retaliation claim by a non-employee:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's *adverse action* was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Worrell*, 219 F.3d at 1212 (emphasis added) (quotation omitted). The *Worrell* court, and subsequent trial courts, have expressly used the language of "adverse action" as shorthand for the second prong of the test, i.e., an injury that would chill a person of ordinary firmness in continuing to engage in that activity. *Id.*; *see also Givens v. City of Wichita*, No. 6:23-cv-01033-HLT-TJJ, 2024 WL 1198503, at *13 n. 12 (D. Kan. Mar. 20, 2024) ("The adverse action requirement applies under either the *Garcetti*/*Pickering* test or the *Worrell* test.").[9]

But most significantly, the Supreme Court has used the term "adverse action" in articulating what an elected official must show in order to pursue a First Amendment

---

[9] The *Pickering/Garcetti* and *Worrell* standards do differ, as the *Pickering/Garcetti* requires plaintiffs to show their free speech interest outweighs the government's interest in taking action that allegedly injured the plaintiffs. *See Sweeney-Miran v. City of Boulder*, No. 24-cv-00051-RMR-SBP, 2025 WL 684031, at *6 (D. Colo. Feb. 17, 2025), *recommendation adopted by* No. 24-cv-00051-RMR-SBP, slip op. (D. Colo. Mar. 4, 2025), Dkt. No. 48; *see also Pryor v. Sch. Dist. No. 1*, No. 22-cv-02886-JLK, 2022 WL 18145414, at *11 (D. Colo. Dec. 23, 2022) (referring to the *Pickering/Garcetti* standard as "the more stringent standard preferred by Defendants"), *aff'd*, 99 F.4th 1243, 1250 n.2 (10th Cir. 2024) (noting the "non-employee test is generally less stringent and protects a broader free speech interest"). But Defendant does not challenge the First Amended Complaint on any ground other than the failure to plead an adverse action [Doc. 30 at 9], and accordingly, none of the arguments implicate this distinction.

10

retaliation claim.  See *Houston Cmty. Coll. Sys. v. Wilson* ("*HCCS*"), 595 U.S. 468, 477 (2022) (citations omitted) ("Under this Court's precedents, a plaintiff pursuing a First Amendment retaliation claim must show, among other things, that the government took an 'adverse action' in response to his speech that 'would not have been taken absent the retaliatory motive.'").  There is no question that this Court is bound by Supreme Court and Tenth Circuit precedent.  Thus, the Court now turns to whether, drawing all inferences in favor of Plaintiffs, the Amended Complaint sufficiently pleads an adverse action to avoid dismissal.

### B. Adverse Action

Defendant argues that the City Council Motions are akin to an internal workplace investigation, which is insufficient to constitute an adverse action to state a cognizable First Amendment retaliation claim.  [Doc. 10 at 4–5].  Plaintiffs argue that a "criminal investigation and attempted prosecution with a threatened ban from public office . . . would chill a person of ordinary firmness from expressing their views publicly and criticizing the city council."  [Doc. 21 at 11].  Plaintiffs assert that "the *threat* of prosecution in retaliation for speech or petitioning is a First Amendment injury."  [*Id.*].

The chilling effect of an adverse action must be determined on an objective basis. *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003).  Under Tenth Circuit authority, "allegations of physical and verbal intimidation, would surely suffice under our precedents to chill a person of ordinary firmness from continuing to" engage in protected First Amendment activity.  *Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007). Several circuit courts of appeal have concluded that a "a mere threat of official or legal action qualifies as constitutionally actionable harm."  *Jiron v. Roth*, 519 F. Supp. 3d 971,

11

999 (D.N.M. 2021) (collecting cases). While not all threats of official action are actionable under the First Amendment, there is no bright line rule in the Tenth Circuit establishing when a threat is actionable. *See, e.g.*, *Evans v. Fogarty*, 241 F. App'x 542, 559 (10th Cir. 2007) (without reaching the issue, the court stated that it was "skeptical" that the threat of having a nursing home investigated for fraudulent billing was actionable). However, courts generally "do not consider standard workplace investigations to be adverse employment actions" in the context of a First Amendment retaliation claim. *Lincoln v. Maketa*, 880 F.3d 533, 543 (10th Cir. 2018) (citing *Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1243 (10th Cir. 2009)).

But this case does not present a standard workplace investigation.[10] Rather, Plaintiffs are elected city council members who are inherently engaged in the political process. The Supreme Court has recognized with respect to elected officials, what may constitute a cognizable adverse action must be viewed through the lens of the political process. *See HCCS*, 595 U.S. at 478. In *HCCS*, the Supreme Court was presented with the question of whether the censure of an elected member of the Board of Trustees of a Community College System amounted to an adverse action for the purpose of a First Amendment retaliation claim. *Id.* at 471. The Supreme Court recognized that lower courts had taken different approaches to determine material from immaterial adverse actions, but that "any fair assessment of the materiality of the [Defendant]'s conduct" in the case must account for the fact that the plaintiff was an elected official. *Id.* at 478. A unanimous Court in *HCCS* concluded that a public censure of the elected official did not

---

[10] Defendant argues that the City Council Motions are "fundamentally no different than a standard workplace investigation." [Doc. 10 at 6]. This Court respectfully disagrees that an internal, non-public workplace investigation is the correct framework for this action.

12

amount to an adverse action because the censure itself was a form of speech by equal members of a deliberative body and did not deprive the plaintiff any privilege of office or result in any punishments. *Id.* at 479. The *HCCS* Court made clear that "it does not involve expulsion, exclusion, or any other form of punishment." *Id.* at 482; *see also Boquist v. Courtney*, 32 F.4th 764, 776 (9th Cir. 2022) ("[C]riticism from [elected representatives'] colleagues alone is unlikely to be [a] material [adverse action], because '[i]n this country, we expect elected representatives to shoulder a degree of criticism about their public service from their constituents and their peers.'" (quoting *HCCS*, 595 U.S. at 478)); *see also Zilich v. Longo*, 34 F.3d 359, 361 (6th Cir. 1994) (concluding that a city council's legislative resolution criticizing a departing council member is not a material adverse action).

The Supreme Court has held that prohibiting an elected official from taking office due to protected speech can be an adverse action under the First Amendment. *See Bond v. Floyd*, 385 U.S. 116, 136–37 (1966) (stating that a state legislature's blocking an elected representative from taking office because he had criticized the government's policy in Vietnam was a violation of the representative's First Amendment rights). Courts have also held that prohibiting an elected representative from acting in their role is an adverse action. *See Boquist*, 32 F.4th at 783 (concluding that a rule that required a senator to provide 12-hour notice of his intent to enter the state capitol was an adverse action that would chill a person of ordinary firmness). But courts have declined to find First Amendment protection for an elected official "whose rights to freedom of speech, freedom of association, and freedom to disassociate [oneself] from unpopular views have been injured by other politicians seeking to undermine his credibility within his own party

13

and with the electorate." *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 34 (1st Cir. 1996) (quotation omitted).

Here, Plaintiffs allege as follows. As a result of Plaintiffs' opposition to SB 23-273 that would limit the development of Centerra South as reflected in the Petitions, Mr. Krenning instigated the Motion to Investigate "to determine whether or not criminal action should be taken" based on alleged violations of the Colorado Open Meetings Law and the Loveland City Charter. [Doc. 30 at ¶¶ 50–64]. He specifically stated that he would "report back to the [City] [C]ouncil with findings, and if violations are concluded, for follow up action." [*Id.* at ¶ 51]. The resulting Gregory Report concluded that probable cause existed to find that Plaintiffs violated §§ 4-2, 4-4, 4-5 and 15-7 of the Loveland Municipal Code and if convicted, that the violated "provision provides that punishment is mandatory, as a violation 'shall be punished' by a fine or imprisonment or both." [*Id.* at ¶¶ 69–71 (ellipsis omitted)]. The report further found "probable cause to seek the prosecution of [Plaintiffs]" and "the filing of criminal charges against [Plaintiffs]. [*Id.* at ¶¶ 72–73]. If convicted of the relevant provisions for which Mr. Gregory found probable cause that Plaintiffs had violated, "Plaintiffs would be required to be removed as sitting [City] Council members and disqualified from ever seeking election to the City Council again." [*Id.* at ¶ 70]. Further, "Plaintiffs would face a $300 fine and up to 90 days in jail." [*Id.* at ¶ 74].

Based on the Gregory Report, the remaining City Council members and the mayor of Loveland voted to appoint a special prosecutor, Kathy Haddock, through the Motion to Prosecute. [*Id.* at ¶ 87]. During the March 29, 2024 City Council meeting, Ms. Haddock was appointed as special prosecutor. [*Id.* at ¶ 88]. On April 14, 2024, Ms. Haddock issued the Haddock Report addressed to the Acting Loveland City Attorney, explaining

14

that she was declining to pursue criminal charges against Plaintiffs, and that the conduct alleged by the remaining City Council members and the mayor did not constitute a violation of the Colorado Open Meetings Law or the Loveland City Charter. [*Id.* at ¶¶ 89–90; Doc. 22-1].

While Plaintiffs argue that the "intimidation and harm from the investigation and threated [sic] prosecution here is on a higher level of magnitude such as to constitute a chill and abridgement of First Amendment rights," [Doc. 21 at 7], Plaintiffs do not plead that any of these consequences did in fact occur, *see* [Doc. 30]. Plaintiffs also do not plead that they were barred from representing their constituents, participating in meetings,[11] or acting on City Council business during the approximately one-month period between the initiation of the Motion to Investigate on March 19, 2024 and the Haddock Report on April 14, 2024. *See* [*id.* at ¶¶ 50–91]. Instead, Plaintiffs argue that the mere prospect of such consequences is "sufficiently intimidating and harassing such as to chill speech or petitioning activity." [Doc. 21 at 13].

But these speculative consequences are insufficient to state a First Amendment claim. *Belcher v. City of McAlester*, 324 F.3d 1203, 1207 n.4 (10th Cir. 2003). This is particularly true where the alleged retaliatory action was against elected officials by other equal members of the same elected body. *See HCCS*, 595 U.S. at 479. Both the Governor Petition and the House Petition appear on letterhead for the City of Loveland; identify Plaintiffs as members of City Council of Loveland; and are signed by Plaintiffs as "Members of Loveland City Council" and identifying each of their respective wards. [Doc.

---

[11] Indeed, the Amended Complaint reflects that although Plaintiffs recused themselves from debate and vote regarding Mr. Krenning's Motion to Investigate, they were not forced from the chambers and Plaintiff Olson, in fact, stayed. [Doc. 30 at ¶ 56].

15

1-3; Doc. 1-4]. Indeed, Plaintiffs concede that they sent each of the Petitions were sent in "their capacity as members of the Loveland City Council." [Doc. 30 at ¶¶ 28, 36]. "In this country, we expect elected representatives to shoulder a degree of criticism about their public service from their constituents and their peers—and to continue exercising their free speech rights when the criticism comes." *HCCS*, 595 U.S. at 478. There are no allegations in the Amended Complaint that the Official Policy has actually impacted Plaintiffs' respective reputations in the community or harmed his or her future employment or electability. *See* [Doc. 30]. As Defendant points out and Plaintiffs do not refute, the City Council is responsible for "policing the conduct of its own members," the City Council may employ special counsel, and the City Council has indeed employed special counsel on several occasions. *Compare* [Doc. 10 at 5–6], *with* [Doc. 21 at 16].

Nor does the Motion to Prosecute and the subsequent appointment of a special prosecutor change this Court's analysis. The question of whether a criminal investigation is an adverse action for a First Amendment claim is an open question under Supreme Court and Tenth Circuit authority. *Lincoln*, 880 F.3d at 541. In *Lincoln*, the Tenth Circuit concluded that a plaintiff had failed to "demonstrate[] that [a] criminal investigation would 'obviously' constitute an adverse employment action" because the charges were never filed and the plaintiff had not pointed the court to any on-point cases that would support such a finding. 880 F.3d at 540–41. The Tenth Circuit noted that the U.S. Supreme Court "has declined to consider whether a retaliatory criminal investigation entails a constitutional violation." *Id.* at 540 (citing *Hartman v. Moore*, 547 U.S. 250, 262 n.9 (2006)). Further, the Tenth Circuit highlighted that other circuits disagree as to whether a criminal investigation can serve as a First Amendment violation. *Id.* (comparing

16

*Rehberg v. Paulk*, 611 F.3d 828, 850–51 & n.24 (11th Cir. 2010) (declining to treat a retaliatory criminal investigation as a First Amendment violation) with *Coszalter v. City of Salem*, 320 F.3d 968, 976 (9th Cir. 2003) (noting that a criminal investigation can violate the First Amendment)).

The Tenth Circuit has held that a criminal investigation resulting in criminal charges can be an adverse action because a "criminal trial . . . is necessarily public and therefore carries a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Berry v. Stevinson Chevrolet*, 74 F.3d 986, 986 (10th Cir. 1996) (holding that an employer's malicious filing of criminal charges constituted an adverse employment action). Plaintiffs rely on *Berry* to argue that the public nature of the City Council's Motion to Prosecute "carries a greater risk of humiliation, damage to reputation, or harm to future election prospects" and therefore is an injury that "constitute[s] a chill and abridgement of First Amendment rights." [Doc. 21 at 7]. However, the court's analysis in *Berry* depended upon the filing of criminal charges and a subsequent criminal trial that did in fact occur, neither of which are present in this case. 74 F.3d at 986.

Here, the special prosecutor declined to prosecute, and no charges were ever filed. *See* [Doc. 30 at ¶¶ 89–91]. Plaintiffs appear to remain members of the Loveland City Council. *See Council Members*, City of Loveland, https://www.lovgov.org/city-government/city-council/council-members (last visited Sept. 10, 2025). And there are no factual averments in the Amended Complaint that the Official Policy had any impact upon these Plaintiffs' subsequent exercise of their rights to free speech or to petition under the First Amendment. *See* [Doc. 30]. This Court respectfully concludes that Plaintiffs have

17

failed to plausibly allege an adverse action sufficient to state a First Amendment claim regarding the Defendant's alleged Official Policy. Accordingly, Defendant's Motion to Dismiss is respectfully **GRANTED in part** with respect to all claims under a theory of retaliation.

## II. Content and Viewpoint Theory

Defendant's Motion does not separately address content and viewpoint discrimination with respect to Plaintiffs' exercise of the right to petition and the right to free speech under the First Amendment. *See* [Doc. 10]. Instead, Defendant asserts that "no such discussion [is] necessary because all of Plaintiffs' First Amendment theories are retaliation theories." [Doc. 34 at 7]. At this juncture based on the briefing before it, this Court respectfully disagrees.

The argument that any claim that the Official Policy abridges Plaintiffs' First Amendment rights to petition and free speech based on a theory of content and viewpoint discrimination is identical to Plaintiffs' retaliation theory was first raised in Defendant's Reply. *Compare* [Doc. 10], *with* [Doc. 34 at 2]. However, "arguments raised for the first time in a reply brief are generally deemed waived." *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011). Upon review of the Amended Complaint, it is not entirely clear to this Court how the two theories diverge, but "[g]enerally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply." *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005).

Accordingly, no later than **September 24, 2025**, Plaintiffs are **ORDERED to SHOW CAUSE** as to how their claims asserting violations of their First Amendment rights to petition and to free speech based on a theory of content and viewpoint discrimination

are distinct from their claims based on a theory of retaliation and why such claims should not be dismissed subject to the analysis herein. No response to the Order to Show Cause is permitted.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendant's Motion to Dismiss [Doc. 10] is **GRANTED in part;**

(2) Counts I and II asserting violations of First Amendment rights to petition and to free speech, insofar as such causes of action are based on a theory of retaliation, are **DISMISSED without prejudice**;

(3) Defendant's Motion to Dismiss [Doc. 10] is **RESERVED in part** as to Counts I and II asserting violations of First Amendment rights to petition and to free speech, insofar as such causes of action are based on a theory of content and viewpoint discrimination; and

(4) No later than **September 24, 2025**, Plaintiffs Dana Foley, Andrea Samson, Steve Olson, and Pat McFall are **ORDERED to SHOW CAUSE** as to how their claims asserting violations of their First Amendment rights to petition and to free speech based on a theory of content and viewpoint discrimination are distinct from their claims based on a theory of retaliation and why such claims should not be dismissed subject to the analysis herein. **Failure to respond to the Order to Show Cause in a timely manner may lead to the dismissal of this action without any further notice by the Court.**

DATED: September 10, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge